## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> DEOGENE MEZA, MELODY MEZA, THE FUTURES GROUP IT LLC, FUTURES GROUP HOLDINGS INC., FUTURES GROUP STAFFING SOLUTIONS, INC., ERIC ROSENTHAL and NICHOLAS CASCIO, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY, by and through its counsel, and for its Complaint for Declaratory Judgment against Defendants, DEOGENE MEZA, MELODY MEZA, THE FUTURES GROUP IT LLC, FUTURES GROUP HOLDINGS INC., FUTURES GROUP STAFFING SOLUTIONS, INC., ERIC ROSENTHAL and NICHOLAS CASCIO, states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff PHILADELPHIA INDEMNITY INSURANCE COMPANY ("**PIIC**") is a Pennsylvania corporation with its principal place of business in Bala Cynwyd, Pennsylvania.

2.      Defendant DEOGENE MEZA ("**Mr. Meza**") is upon information and belief a citizen of the state of Florida residing in Wellington, Florida.

3.      Defendant MELODY MEZA ("**Mrs. Meza**") is upon information and belief a citizen of the state of Florida residing in Wellington, Florida.

4.      Defendant THE FUTURES GROUP IT LLC ("**Futures Group IT**") is upon information and belief a New York limited liability corporation with its principal place of business

in New York City, New York and with Mr. Meza and Mrs. Meza as its sole members.

5.      Defendant FUTURES GROUP HOLDINGS INC. ("**Futures Group Holdings**") is upon information and belief a New York corporation with its principal place of business in New York City, New York.

6.      Defendant FUTURES GROUP STAFFING SOLUTIONS, INC. ("**Futures Group Staffing**") (collectively with Futures Group IT and Futures Group Holdings, the "**Futures Group Companies**") is upon information and belief a Florida corporation with its principal place of business in Wellington, Florida.

7.      Defendant ERIC ROSENTHAL ("**Mr. Rosenthal**") is upon information and belief a citizen of the state of New York residing in County of Kings, New York.

8.      Defendant NICHOLAS CASCIO ("**Mr. Cascio**") is upon information and belief a citizen of the state of New York residing in County of Nassau, New York.

9.      Mr. Rosenthal and Mr. Cascio are proper parties to this declaratory judgment action under Fed. R. Civ. P. 19 and 20, because they are the plaintiffs in litigation for which Mr. Meza, Mrs. Meza and the Futures Group Companies are seeking insurance coverage for their defense and liability from PIIC, in that their joinder will not deprive the Court of subject matter jurisdiction, they claim an interest related to the subject of insurance coverage for Mr. Meza, Mrs. Meza and the Futures Group Companies, and the disposition of this action in their absence may, as a practical matter, impair or impede their ability to protect those interests or may leave the parties subject to a substantial risk of inconsistent obligations because of those interests.  In addition, questions of law or fact common to all defendants will arise in this action.

10.     Pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction over this dispute because there is complete diversity between the Plaintiff and the Defendants herein, and the amount at issue exceeds $75,000, exclusive interest and costs.

11.    Venue is proper under 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## THE UNDERLYING LAWSUIT

12.    On or about October 12, 2017, Rosenthal and Cascio filed a lawsuit captioned *Eric Rosenthal and Nicholas Cascio v. Deogene Meza, Melody Meza, The Futures Group IT LLC, Futures Group Holdings Inc. and Futures Group Staffing Solutions, Inc.*, filed on or about October 12, 2017 in the Supreme Court of the State of New York County of New York (the "**Lawsuit**"). A true and correct copy of the Verified Complaint filed in the Lawsuit is attached as Exhibit A.

13.    The Lawsuit alleges that, upon information and belief, Ms. Meza and Mr. Meza are officers and the sole members of Futures Group IT, Futures Group Holdings, and Futures Group Staffing.

14.    The Lawsuit asserts that, based on the allegations contained therein, Defendants:

(i)     are alter egos of each other;

(ii)    have abused the corporate form justifying the piercing of the corporate veil;

(iii)   have engaged in a pattern of fraudulent misrepresentations designed to have Plaintiffs continue to provide services on behalf of the Futures Group Companies without just compensation;

(iv)    breached their agreements and obligations to pay Plaintiffs;

(v)     have been unjustly enriched by withholding payment from plaintiffs; and

(vi)    have effectively converted Plaintiffs' property by absconding with commissions they have already earned that remain unpaid.

15.    The Lawsuit's first Cause of Action, asserted against all Defendants, is for "Declaratory Judgment of Alter Ego Liability/Piercing Corporate Veil".

16.    The Lawsuit alleges that, upon information and belief, "Futures Group is an alter ego of Defendants Mr. Meza and Mrs. Meza" and that "Mr. Meza and Mrs. Meza purposely undercapitalized and/or transferred assets from Futures Group and otherwise utilized their complete domination and control over Futures Group in an effort to evade liability for Future

3

Groups' debts to Plaintiffs."

17. The Lawsuit asserts that Mr. Meza and Ms. Meza, in their individual capacities, or through their domination over the Futures Group Companies, "committed a series of wrongs which caused Plaintiffs' injuries" as set forth in the Lawsuit, including but not limited to damages arising from (i) breach of contract; (ii) conversion; (iii) unjust enrichment; and (iv) fraud.

18. The Lawsuit alleges that, as a result, Plaintiffs are entitled to (i) a declaratory judgment that the three entities defined as Futures Group are alter egos of Ms. Meza and Mr. Meza or, in the alternative, that the corporate veils of the Futures Group Companies should be pierced; and (ii) a money judgment against all Defendants, jointly and severally, for damages, including but not limited to punitive damages, in the amount to be determined at trial, but not less than $2 million, plus interest, costs, disbursements, and reasonable attorney's fees.

19. The Lawsuit's second Cause of Action, asserted against all Defendants, is for Breach of Contract, and alleges that Plaintiffs entered into an oral agreement with defendants regarding the terms of their employment, pursuant to which Defendants were obligated to pay Plaintiffs their earned commissions.

20. The Lawsuit asserts that Defendants breached the terms of such agreement by failing or otherwise refusing to pay Plaintiffs commissions due and owing and, as such, Plaintiffs are entitled to a judgment against all Defendants, jointly and severally, for damages, including but not limited to punitive damages, in an amount to be determined at trial, but not less than $2 million, plus interest, costs, disbursements, and reasonable attorney's fees.

21. The Lawsuit's third Cause of Action, asserted against all Defendants, is for Unjust Enrichment, and alleges that Futures Group Companies and/or Mr. Meza and/or Ms. Meza benefited from the services rendered by Plaintiffs but failed to pay for such services, and have retained and failed to remit to Plaintiffs their earned commissions.

22. As such, the Lawsuit asserts that Plaintiffs are entitled to a judgment against all Defendants, jointly and severally, for damages, including but not limited to punitive damages, in an amount to be determined at trial, but not less than $2 million, plus interest, costs, disbursements, and reasonable attorney's fees.

23. The Lawsuit's fourth Cause of Action, asserted against all Defendants, is for Conversion, and alleges that Defendants wrongfully and unlawfully converted a sum in excess of $2 million that is due and owing to Plaintiffs.

24. As a result, the Lawsuit asserts that Plaintiffs are entitled to a judgment against all Defendants, jointly and severally, for damages, including but not limited to punitive damages, in an amount to be determined at trial, but not less than $2 million, plus interest, costs, disbursements, and reasonable attorney's fees.

25. The Lawsuit's fifth Cause of Action, asserted against all Defendants, is for Breach of Fiduciary Duty, and alleges that, despite Defendants' representations to Plaintiffs regarding payment of commissions, Defendants "did not pay and otherwise refused to pay Plaintiffs their commissions" which constituted a breach of Defendants' fiduciary duty to Plaintiffs.

26. The Lawsuit asserts that Plaintiffs are entitled to a judgment against all Defendants, jointly and severally, for damages, including but not limited to punitive damages, in an amount to be determined at trial, but not less than $2 million, plus interest, costs, disbursements, and reasonable attorney's fees.

27. The Lawsuit's sixth Cause of Action, asserted against all Defendants, is for Fraud, and alleges that Defendants knowingly made material misrepresentations regarding commission payments to Plaintiffs, knowing that such representations were false.

28. The Lawsuit asserts that Plaintiffs were damaged by their reliance on Defendants' false representations "in an amount equivalent to their commissions, plus interest."

29. The Lawsuit alleges that Plaintiffs are entitled to a judgment against all Defendants, jointly and severally, for damages, including but not limited to punitive damages, in an amount to be determined at trial, but not less than $2 million, plus interest, costs, disbursements, and reasonable attorney's fees.

30. The Lawsuit's seventh Cause of Action, asserted against all Defendants, is for Constructive Trust, and alleges that Mr. Meza and Ms. Meza, in their individual capacities, as well as in their capacities as representatives of Futures Group Companies, misused and/or misappropriated assets of the Futures Group Companies for their own personal use and effectively converted Plaintiffs' commissions in the process.

31. The Lawsuit requests that a constructive trust be impressed upon Defendants' assets in an amount to be determined at trial, but not less than $2 million, plus interest, costs, disbursements, and reasonable attorney's fees.

32. The Lawsuit's eighth Cause of Action, asserted against all Defendants, alleges violations of the New York Labor Law Article 6, Section 191-C ("NYLL Section 191-C") which, according to the Lawsuit, provides that "when a sales representative relationship is terminated, 'all earned commissions shall be paid within five (5) business days after termination.'"

33. The Lawsuit alleges that, at the time Plaintiffs' sales representative relationships with the Futures Group Companies terminated, in January 2017, Mr. Rosenthal was owed $997,738.83 and Mr. Cascio was owed $846,766.67 in commissions.

34. The Lawsuit asserts that, pursuant to NYLL Section 191-C, Defendants are liable for "double damages" and, therefore, Plaintiffs are entitled to judgment against all Defendants, jointly and severally, for damages, including but not limited to punitive damages, in an amount to be determined at trial, but not less than $4 million, plus interest, costs, disbursements, and reasonable attorney's fees.

6

35.     In addition to the foregoing, the Lawsuit demands a judgment awarding Plaintiffs "such other and further relief as the Court may find just, proper, and equitable, including, but not limited to, an award of reasonable attorney's fees, costs and disbursements."

## THE POLICY

36.     PIIC issued a Private Company Protection Plus Policy, Policy No. PHSD1132652, to Futures Group IT, LLC, with a Policy Period of April 15, 2016 to April 15, 2017 (the "**Policy**"). A true and correct copy of the Policy is attached hereto as Exhibit B.

37.     Futures Group IT, LLC, purchased coverage under Part 2, the Employment Practices Liability Insurance (the "**EPL Insurance**") for the Policy.

38.     The Limit of Liability under each Coverage Part is $1 million, subject to a $1 million Aggregate Limit of Liability.

39.     Coverage under the Policy is subject to a Retention of $2,500 for each Claim under Part 2, the EPL Insurance.

## COUNT I – DECLARATORY JUDGMENT UNDER 28 USC § 2201

**FUTURES GROUP HOLDINGS AND FUTURES GROUP STAFFING
ARE NOT INSUREDS UNDER THE POLICY AND MR. MEZA AND MRS. MEZA
ARE NOT INSUREDS IN CONNECTION AS MEMBERS OR REPRESENTATIVES
OF THOSE ENTITIES OR IN THEIR INDIVIDUAL CAPACITIES**

40.     PIIC repeats and realleges Paragraphs 1 through 39 as if set forth fully herein.

41.     The Policy's Part 4 ("COMMON POLICY DEFINITIONS"), paragraph H. defines "Insured" to mean "the Private Company and Individual Insured."  The Policy's Part 4, paragraph L. defines "Private Company" to mean, in part, the "Named Corporation" and "any Subsidiary". Part 4, paragraph K. defines "Named Corporation" to mean "the first entity named in Item 1 of the Declarations Page."

42.     The Policy's Part 4, paragraph Q. defines "Subsidiary" to mean:

7

1.    a corporation of which the Named Corporation owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its Subsidiaries or the right to elect, appoint or designate more than 50% of such entity's board of directors, trustees, or managers and which is set forth in the Application;

2.    a corporation which becomes a Subsidiary during the Policy Period and whose assets total less than 25% of the total consolidated assets of the Named Corporation as of the inception date of this Policy Period.  The Named Corporation shall provide the Underwriter with full particulars of the new Subsidiary before the end of the Policy Period;

3.    a corporation, which becomes a Subsidiary during the Policy Period other than a corporation described in paragraph 2. above, but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Corporation shall have provided the Underwriter with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this Policy required by the Underwriter relating to such new Subsidiary.  Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Corporation paying when due any additional premium required by the Underwriter relating to such new Subsidiary.

A corporation becomes a Subsidiary when the Named Corporation owns more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries.  A corporation ceases to be a Subsidiary when the Named Corporation ceases to own more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries.  Coverage for Claims made against any Subsidiary or the Individual Insureds of any Subsidiary shall only apply to Wrongful Acts of such Subsidiary or the Individual Insureds of such Subsidiary occurring after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

43.    The Policy's Part 4, paragraph G. defines "Individual Insured" to mean:

1.    any individual who has been, now is or shall become a director, officer, governor, trustee, Employee, volunteer, management committee member, or member of the Board of Managers of the Private Company or, solely with respect to Part 3 (Fiduciary Liability Insurance), a director, officer, governor, trustee or Employee of any Benefit Plan;

2.    the lawful spouse of a director, officer, governor, trustee, or equivalent executive of the Private Company, but only for actual or alleged Wrongful Acts of such person for which such spouse may be liable as the spouse of such person;

3.    the estate, heirs, legal representatives or assigns of a deceased director or

8

officer, or the legal representatives or assigns of such a person who is incompetent, but only for Wrongful Acts of the person described in G. (1) or (4) which, in the absence of such death or incompetence, would have been covered by this Policy;

4.       with respect to a Private Company chartered outside the United States of America, any individual who has been, now is or shall become a person serving in a position with such Private Company that is equivalent to any position described in (1) above.

44.       The Policy's Part 4, paragraph E., as amended by the Business Advantage Pro-Pak Elite Coverage, endorsement PI-PRD-72-NY (06/13), defines "Employee," as used in the aforementioned definition of "Individual Insured" to mean the following:

Employee means any natural person whose labor or service is engaged by and directed by the Private Company, including part-time, seasonal, leased and temporary employed persons as well as volunteers, but only while that natural person is acting in his or her capacity as such.  Employee shall include Independent Contractor as defined below.

Independent Contractor means an individual who is contracted to perform services for the Private Company; provided that such individual shall be deemed an Employee only if and to the extent that the Private Company provides indemnification to such individual for services rendered as if they were rendered by an actual Employee of the Private Company, and provided further that such individual(s) have been identified by the Private Company to the Underwriter.  This Policy does not cover any Loss which any Insured is obligated to pay an Independent Contractor for overtime pay, vacation pay, employee benefit, or any compensation for services rendered.

45.       As noted above, the Lawsuit names the following parties and individuals as Defendants: (1) Mr. Meza; (2) Ms. Meza; (3) Futures Group IT; (4) Futures Group Holdings; and (5) Futures Group Staffing.

46.       Given that neither Futures Group Holdings nor Futures Group Staffing are a "Named Corporation" under the Policy, in order to constitute an "Insured" under the Policy, they would need to fall within the definition of "Subsidiary."

47.     Neither Futures Group Holdings or Futures Group Staffing are Insureds under the Policy, as neither one constitutes either the Named Corporation, or a subsidiary of the Named Corporation.

48.     In addition, neither Mr. Meza nor Ms. Meza constitute an "Individual Insured" in their respective capacities as "individuals" nor in their respective capacities as members or representatives of Futures Group Holdings and Futures Group Staffing.

49.     Moreover, the Policy's Part 5 ("COMMON POLICY EXCLUSIONS"), paragraph M. provides that PIIC shall not be liable to make any payment for Loss in connection with any Claim made against the Insured:

    M.     for service by the Individual Insured in any position or capacity in any entity other than the Private Company, a Benefit Plan or an Outside Entity, even if the Private Company directed or requested the Individual Insured to serve in such other position or capacity;

50.     As noted above, neither Futures Group Holdings nor Futures Group Staffing is an "Insured" as defined by the Policy. The Lawsuit asserts that Mr. Meza and Ms. Meza are members of Futures Group Holdings and Futures Group Staffing.

51.     The Policy does not afford coverage for any loss sustained by Mr. Meza or Mrs. Meza as members of Futures Group Holdings or Futures Group Staffing.

52.     However, Futures Group Holdings or Futures Group Staffing deny that coverage does not exist for them under the Policy, and Mr. Meza and Mrs. Meza deny that there is no coverage for any loss sustained by them as members or representatives of Future Group Holdings or Futures Group Staffing.

53.     Accordingly, an actual controversy exists between the parties, and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

WHEREFORE, Philadelphia Indemnity Insurance Company respectfully requests this Honorable Court to issue an order:

(a)    declaring that neither Futures Group Holdings nor Futures Group Staffing are Insureds under the Policy;

(b)    declaring that no coverage exists for Futures Group Holdings or Futures Group Staffing under the Policy in connection with the Lawsuit or otherwise;

(c)    declaring that the Policy does not afford coverage for any loss sustained by Mr. Meza or Mrs. Meza as members of Futures Group Holdings or Futures Group Staffing or in their individual capacities; and

(d)    awarding Philadelphia Indemnity Insurance Company such other and further relief as the Court may deem just and proper.

## COUNT II – DECLARATORY JUDGMENT UNDER 28 USC § 2201

### THERE IS NO COVERAGE UNDER THE POLICY
### FOR PLAINTIFFS' DEMANDS FOR COMMISSIONS

54.    PIIC repeats and realleges Paragraphs 1 through 53 as if set forth fully herein.

55.    Pursuant to Part 2, the EPL Insurance, Section III. ("EXCLUSIONS"), paragraph E., as amended by the New York - Amendatory Changes, endorsement PI-PRD-NY (04/13), the Policy provides that PIIC shall not be liable under Part 2 to make any payment for Loss in connection with any Claim made against the Insured:

E.    to the extent such Loss constitutes employment-related benefits, stock options, perquisites, deferred compensation, payment of insurance, or any other type of compensation earned by the claimant in the course of employment or the equivalent value thereof; however, this exclusion shall not apply to front pay or back pay;

56.    Accordingly, since the Policy does not afford coverage for "any type of compensation earned by the claimant in course of employment or the equivalent value thereof,"

11

the Plaintiffs' demand for commissions in Counts II, III, VI, VII and VIII of the Lawsuit is not covered under the Policy.

57.    In addition, the Policy's Part 2, the EPL Insurance, Section III. ("EXCLUSIONS"), paragraph D., as amended by the New York - Amendatory Changes, endorsement PI-PRD -NY (04/13), provides that PIIC shall not be liable under Part 2 to make any payment for Loss in connection with any Claim made against the Insured:

D.    arising out of, based upon or attributable to obligations or payments owed under (i) an express (written or verbal) contract of employment, (ii) an agreement to make payments in the event of the termination of employment, or (iii) an agreement to assume another's liability; however, this exclusion does not apply to any of the following:

1.    liability of the Private Company which would have attached even in the absence of such contract or agreement;

58.    The Lawsuit alleges, in relevant part, that Plaintiffs entered into an oral agreement with Defendants regarding the terms of their employment with the Futures Group Companies, and that pursuant to said agreement, "Defendants agreed to pay Plaintiffs' commissions based on a percentage of every deal executed by the firm as outlined and detailed by the parties' respective commission reports."

59.    In addition, the Lawsuit alleges that the Defendants violated the Labor Law Article 6, Section 191-C which addresses commissions agreed upon pursuant to a written contract.

60.    As a result, these contractual damages are not covered under the Policy pursuant to Exclusion III. D.

61.    In addition, contractual damages such as commissions do not constitute "Loss" or "Damages" under the Policy.

62.    However, the Insureds deny that coverage does not exist for an award for the commissions under the Policy.

63.     Accordingly, an actual controversy exists between the parties, and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

WHEREFORE, Philadelphia Indemnity Insurance Company respectfully requests this Honorable Court to issue an order:

(a)     declaring that Plaintiffs' demands for commissions is not covered under the Policy; and

(b)     awarding Philadelphia Indemnity Insurance Company such other and further relief as the Court may deem just and proper.

### COUNT III – DECLARATORY JUDGMENT UNDER 28 USC § 2201

**THERE IS NO COVERAGE UNDER THE POLICY
FOR PLAINTIFFS' DEMANDS FOR WAGES**

64.     PIIC repeats and realleges Paragraphs 1 through 63 as if set forth fully herein.

65.     The Policy's Part 2, the EPL Insurance, Section III. ("EXCLUSIONS"), paragraph B., as amended by the Amendment of Exclusions endorsement, PI-PRD-75 NY (01/15), provides that PIIC shall not be liable under Part 2 to make any payment for Loss in connection with any Claim made against the Insured:

B.      for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a Claim for Retaliation; provided, further, however, there is no coverage provided under this policy for any Claim related to, arising out of, based upon, or attributable to the refusal, failure or inability of any Insured(s) to pay Earned Wages (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any Insured(s) from any Employee(s) or purported

Employee(s), including , but not limited to, (i) any unfair business practice claim alleged because of the failure to pay Earned Wages, or (ii) any Claim seeking Earned Wages because any Employee( s) or purported Employee(s) were improperly classified or mislabeled as "exempt."

66.     The Amendment of Exclusions endorsement, PI-PRD-75 NY (01/15), defines "Earned Wages" to mean "wages or overtime pay for services rendered."

67.     The Lawsuit asserts that the Plaintiffs were not paid their full wages and that Futures IT Group was unable to meet payroll.

68.     Pursuant to Exclusion III.B., the Policy does not afford coverage for Earned Wages.

69.     In addition, an Insured's failure to pay wages does not constitute "Loss" or "Damages" under the Policy.

70.     However, the Insureds deny that coverage does not exist for an award for wages under the Policy.

71.     Accordingly, an actual controversy exists between the parties, and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

WHEREFORE, Philadelphia Indemnity Insurance Company respectfully requests this Honorable Court to issue an order:

(a)     declaring that Plaintiffs' demands for wages of the Lawsuit is not covered under the Policy; and

(b)     awarding Philadelphia Indemnity Insurance Company such other and further relief as the Court may deem just and proper.

## COUNT IV – DECLARATORY JUDGMENT UNDER 28 USC § 2201

### OTHER TERMS, CONDITIONS AND EXCLUSIONS LIMIT COVERAGE UNDER THE POLICY IN PART OR IN WHOLE

72.     PIIC repeats and realleges Paragraphs 1 through 71 as if set forth fully herein.

73. Other terms, conditions and exclusions contained in the Policy may limit or preclude coverage for the Lawsuit in part or in whole. These include:

a. The Policy's definition of "Loss" contained in Part 4, COMMON POLICY DEFINITIONS, Item J., as amended.

b. The Policy's definition of "Damages" contained in Part 4, COMMON POLICY DEFINITIONS, Item C., as amended.

c. Part 6, COMMON POLICY CONDITIONS, Section III., DEFENSE AND SETTLEMENT, Subsections A. and B.

d. Part 6, COMMON POLICY CONDITIONS, Section XIX., ALLOCATION, as amended.

74. However, the Insureds deny that coverage does not exist in full for the Lawsuit under the Policy.

75. Accordingly, an actual controversy exists between the parties, and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances

WHEREFORE, Philadelphia Indemnity Insurance Company respectfully requests this Honorable Court to issue an order:

(a) declaring that Philadelphia Indemnity Insurance Company's obligations under the Policy with respect to the Lawsuit are limited in whole or in part pursuant to the terms, conditions and exclusions identified above; and

(b) awarding Philadelphia Indemnity Insurance Company such other and further relief as the Court may deem just and proper.

Respectfully Submitted By:

s/ Patrick M. Kennell

Patrick M. Kennell
KAUFMAN DOLOWICH & VOLUCK, LLP
40 Exchange Place –20th Floor
New York, New York 10005
Email:  pkennell@kdvlaw.com
(212) 485-9600

Counsel for Plaintiff
PHILADELPHIA INDEMNITY INSURANCE
COMPANY

16